UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:21-cv-00610-FDW-DSC

| TIGRESS SYDNEY ACUTE MCDANIEL, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | **ORDER** |
| LIBERTY MUTUAL INSURANCE COMPANY *et al.*, | ) | |
| Defendants. | ) | |

THIS MATTER is before the Court on Defendants' Motions to Dismiss Plaintiff's Third Amended Complaint ("**TAC**"), (Docs. Nos. 96, 102) for Failure to State a Claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. These motions have been fully briefed and are ripe for review. For the reasons set forth below, the Liberty Mutual Defendants'[1] ("**LM**") Motion to Dismiss is GRANTED and Plaintiff's claims against LM are DISMISSED WITH PREJUDICE; Defendant MIB Group, Inc.'s ("**MIB**") Motion to Dismiss is GRANTED IN PART with respect to Plaintiff's claims under 42 U.S.C. § 1981, 42 U.S.C. § 1986, North Carolina gross negligence law, North Carolina defamation law, and § 1681e(b) of the Fair Credit Reporting Act ("**FCRA**"),[2] which are DISMISSED WITH PREJUDICE, and DENIED IN PART with regard to Plaintiff's claims under § 1681g(a)(1) and § 1681i(a) of the FCRA.

---

[1] All Defendants other than MIB Group, Inc., including: Liberty Mutual Insurance Company; Liberty Mutual Fire Insurance Company; Liberty Mutual Capital Corporation; Liberty Mutual Equity Corporation; Liberty Mutual Equity, LLC; Liberty Mutual Foundation, Inc.; Liberty Mutual Asset Management, Inc.; Liberty Mutual Group, Inc.; Liberty Mutual Holdings Company, Inc.; Liberty Mutual Investment Advisors, LLC; Liberty Mutual Managed Care, LLC; Liberty Mutual Managed Care, Inc.; Liberty Mutual Mid-Atlantic Insurance Company; Liberty Mutual Personal Insurance Company; LM Insurance Corporation.
[2] 15 U.S.C. § 1681 *et seq.*

1

#### I. Background

On June 2, 2022, *pro se*[3] Plaintiff Tigress McDaniel ("**Plaintiff**") filed her TAC against Defendants LM and MIB (collectively "**Defendants**"). (Doc. No. 91). In her TAC, Plaintiff asserts five causes of action: (1) the violation of her rights under 42 U.S.C. § 1981; (2) the violation of her rights under 42 U.S.C. § 1986; (3) violations of the FCRA; (4) Gross and Vicarious Negligence under North Carolina law; and (5) Defamation under North Carolina law. (Id. at 3).

In 2019, Plaintiff sought and received renter's and car insurance from LM, which she subsequently terminated due to her suspicion of discriminatory underwriting practices resulting in unfairly high premiums. Id. at 3–4. Specifically, Plaintiff alleges that, as an "African American or Black or Black American or Diasporan African, of Haitian and Native American dissent," she was subjected to unlawful "[i]nsurance racial stratification" by Defendants. Id. at 6, 14. On September 9, 2019, Plaintiff alleges she received notice from credit bureaus of an outstanding debt of $434.00 to LM. Id. at 4. Plaintiff originally disputed this balance with Defendants, and, after being denied a life insurance policy from United of Omaha Life Insurance Company due to her criminal record, requested full disclosure of her MIB Consumer File. Id. On March 24, 2021, Plaintiff received a copy of her MIB Consumer File, which she alleges contained "wholly or partially falsified, inaccurate and/or otherwise misrepresentatively [sic] duplicative reports of

---

[3] In her Response to Defendant MIB's Motion to Dismiss, Plaintiff appears to take issue with Defendants' and this Court's use of the term "*pro se*" in that the use of this term indicates prejudicial bias or implied discrimination. Plaintiff alleges that this Court's July 18, 2022, "Roseboro Order and Notice," (Doc. No. 108), demonstrated an "implicit bias against pro se litigants." (Doc. No. 110, p. 2).

The Court notes, however, that the term "pro se" is a legal term of art that means "for oneself," "on one's own behalf," or "without a lawyer." *Pro Se*, BLACK'S LAW DICTIONARY (11th ed. 2019). This term merely indicates that a party is proceeding without a lawyer, and that as such, they must be held to less stringent standards than licensed attorneys. Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam); see also Engle v. U.S., 736 F. Supp. 670, 671–72 (D. Md. 1989). Thus, contrary to Plaintiff's contentions, her status as a *pro se* litigant has no relevance to the merits of Defendants' Motions to Dismiss.

criminal activity in her file," as well as the disputed debt, which had been furnished to MIB by LM. Id. at 4–5. Plaintiff was convicted of Identity Theft and Obtaining Property by False Pretenses in Cabarrus County in 2006. Id. at 15. Plaintiff mentions a defamation suit she alleges to have filed in connection with the Charlotte Observer's reporting on her convictions, but she does not mention any direct appeal of these convictions. Id. Plaintiff submitted new disputes to Defendants on July 15, 2021, and subsequently filed her original complaint on November 10, 2021, (Doc. No. 1), after LM "'maintain[ed] its position'" on the $434.00 balance and MIB failed to respond to her dispute. (Doc. No. 91, p. 5).

This Court granted Plaintiff's request to proceed *in forma pauperis*, (Doc. No. 2), and during its subsequent review,[4] dismissed without prejudice plaintiff's § 1985 and § 1986 claims against all defendants, as well as Plaintiff's FCRA claim against LM, while allowing Plaintiff's FCRA claim against MIB and her negligence claims against Defendants to proceed.[5] (Doc. No. 4, § III). Plaintiff's first Motion for Leave to Amend her Original Complaint was granted on February 2, 2022. (Doc. No. 40). Plaintiff filed her First Amended Complaint on March 3, 2022, (Doc. No. 41). This Court construed her Second Amended Complaint, (Doc. No. 86), as a Motion for Leave to Amend, which the Court granted with caution to Plaintiff that "**she will not be given a third opportunity to amend her complaint absent extraordinary circumstances.**" (Doc. No. 90, p. 3).

On June 3, 2022, Plaintiff filed her TAC. (Doc. No. 91). Defendants LM moved to Dismiss Plaintiff's TAC on June 16, 2022, (Docs. Nos. 96, 97), and Defendant MIB moved to Dismiss

---

[4] After granting a plaintiff's petition to proceed *in forma pauperis*, the Court must review the complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2).
[5] Plaintiff did not make a claim for defamation in her original complaint.

3

Plaintiff's TAC on July 7, 2022. (Docs. Nos. 102, 103). Plaintiff responded to LM's Motion to Dismiss on July 15, 2022, (Doc. No. 105), and LM filed its Reply on July 21, 2022, (Doc. No. 109). Plaintiff responded to MIB's Motion to Dismiss on July 22, 2022, (Doc. No. 110), and MIB filed its reply on July 28, 2022, (Doc. No. 112). Plaintiff also filed two Motions for Leave to File Sur-Reply, (Docs. Nos. 111, 113), which this Court denied.[6]

## II. Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a motion may be dismissed for failure to state a claim upon which relief can be granted. A Rule 12(b)(6) inquiry is limited to determining if the pleader's allegations constitute "a short and plain statement of the claim showing the pleader is entitled to relief." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). To survive a 12(b)(6) motion to dismiss, Plaintiff's "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (quoting Bell Atlantic

---

[6] Pursuant to the principles set forth in Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975), following Defendants' Motions to Dismiss, this Court issued a Roseboro Order and Notice to advise Plaintiff of the burden she carried in responding to those motions. (Doc. No. 108). Plaintiff, in her response to Defendant MIB's Motion, also responded to the Court's Roseboro Order and Notice, writing:

> Regarding Judge Whitney's July 18, 2022 notice and order, oddly implying that Plaintiff is to be likened to the supposedly uninformed or otherwise underinformed Plaintiff inmate in the case upon which he attempts to establish a basis for a misplaced and markedly undue *sua sponte* warning and directive to Plaintiff, and likely purported to be exercised in his discretionary authority, as opposed to implicit bias against pro se litigants . . . ."

(Doc. No. 110, p. 2). Following Roseboro, the Fourth Circuit has "has held that pro se litigants are entitled to specific notice of the consequences of various legal actions." Carter v. Hutto, 781 F.2d 1028, 1033 (4th Cir. 1986); see e.g., Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Davis v. Zahradnick, 600 F.2d 458 (4th Cir. 1979); Hudson v. Hardy, 412 F.2d 1091 (D.C. Cir. 1968). The purpose of a Roseboro notice is to advise a *pro se* litigant of her right to respond and to alert her to the fact that failure to do so might result in the entry of judgment against her. Davis, 600 F.2d at 460. As such, "the Roseboro notice must be sufficiently clear to be understood by a Pro se litigant and calculated to apprise [her] of what is required" of her. Id. This Court filed its Roseboro Order and Notice to do so in compliance with the Fourth Circuit's directive not because this Court was implying Plaintiff was "uninformed or underinformed," but because Plaintiff is proceeding *pro se*—without a lawyer. As discussed above, Plaintiff's *pro se* status carries with it only the fact that she is litigating on her own behalf without the assistance of a trained lawyer and does not indicate any implicit bias against *pro se* litigants by this Court.

4

Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Facial plausibility exists only when the factual content allows a court to draw the reasonable inference that the defendant is liable for the misconduct. Iqbal 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). The Court must draw all reasonable factual inferences in favor of the party asserting the claim. Priority Auto Grp., Inc. v. Ford Motor Co., 757 F.3d 137, 139 (4th Cir. 2014).

In a Rule 12(b)(6) analysis, the Court must separate facts from legal conclusions, as mere conclusions are not entitled to a presumption of truth. Iqbal, 556 U.S. at 678. Importantly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. However, well-pled factual allegations are entitled to a presumption of truth, and the court should determine whether the allegations plausibly give rise to an entitlement to relief. Id. at 679.

Complaints written by *pro se* plaintiffs are construed liberally in favor of the plaintiff, so courts will hold a *pro se* plaintiffs' documents "to a less stringent standard than those drafted by attorneys." See Smith v. Greenville Cnty. Sch. Dist., No. 6:10-2478, 2010 WL 4484099 at *1 (Oct. 5, 2010) (citing Erickson v. Pardus, 551 U.S. 89 (2007); Estelle v. Gamble, 429 U.S. 97 (1976)). However, even under this less stringent standard, "the *pro se* complaint is subject to summary dismissal" if the court is unable to "reasonably read the pleadings to state a valid claim on which plaintiff could prevail" without "construct[ing] plaintiff's legal arguments for her." Id. (citing Small v. Endicott, 988 F.2d 411, 417-18 (7th Cir. 1993). To survive a Rule 12(b)(6) motion, a *pro se* complaint must allege sufficient facts to support all the legal elements of the claim. Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761 (4th Cir. 2003) ("While a plaintiff is not charged with pleading facts sufficient to prove her case, as an evidentiary matter, in her complaint, a

plaintiff *is* required to allege facts that support a claim for relief." (emphasis in original)); see also Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Finally, a court has the discretion to dismiss under Rule 12(b)(6) either with or without prejudice. See Ostrzenski v. Seigel, 177 F.3d 245, 252–53 (4th Cir. 1999). The Fourth Circuit has held that:

> A dismissal under Rule 12(b)(6) generally is not final or on the merits and the court normally will give plaintiff leave to file an amended complaint. The federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that plaintiff be given every opportunity to cure a formal defect in his pleading. This is true even though the court doubts that plaintiff will be able to overcome the defects in his initial pleading. Amendment should be refused only if it appears to a certainty that plaintiff cannot state a claim. The better practice is to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the court will be able to determine conclusively on the face of a defective pleading whether plaintiff actually can state a claim.

Id. (quoting 5A Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 360–67 (2d ed. 1990)) (emphasis omitted). Thus, even where a plaintiff is proceeding *pro se*, a court may refuse to allow amendments to the pleadings where permitting proposed changes would be futile, and in such cases dismissal with prejudice is appropriate. Id.; see also Foman v. Davis, 371 U.S. 178, 182 (1962) (holding that permissible reasons for denying leave to amend pleadings include "repeated failure to cure deficiencies by amendments previously allowed . . . [and] futility of amendment").

### III. Analysis

Plaintiff, in her TAC, asserts five claims for relief, stemming from violations under 42 U.S.C. § 1981, 42 U.S.C. § 1986, North Carolina defamation law, North Carolina gross negligence

6

law, and the FCRA. Defendants move for dismissal of all Plaintiff's claim, arguing her TAC fails to state a claim for which relief can be granted. As such, the Court will address each claim in turn.

**A.     42 U.S.C. § 1981 Claims**

Plaintiff's first claim for relief alleges Defendants violated 42 U.S.C. § 1981 by "intentionally depriv[ing] Plaintiff of the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship inherent and explicit to insurance coverage and policy agreement." (Doc. No. 91, p. 14). Specifically, Plaintiff alleges that she belongs to a racial minority and that Defendants "intentionally deprived Plaintiff of equal rights to fairness in the United States as is enjoyed by white citizens." (Id.). She argues Defendants "wholly or partially falsified, inaccurate and/or otherwise misrepresentatively [sic] duplicative reports of criminal activity in her file" based on her 2006 state court conviction, that they failed to verify the accuracy of that information, and that it was the basis for the denial of her insurance applications and the determination of her insurance premiums. (Id. at 4–5). Defendants argue Plaintiff's § 1981 claim should be dismissed for two reasons: (1) she was granted an insurance contract for which her premium was determined based on her criminal record, and (2) Plaintiff failed to allege any facts to support a reasonable inference that Defendants' actions were motivated by race. (Doc. No. 103, p. 7; Doc. No. 97, p. 7).

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts." 42 U.S.C. § 1981. The statute defines "make and enforce contracts" as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." § 1981(a). To establish a claim for contractual discrimination sufficient

7

to survive a motion to dismiss, plaintiffs must allege: "(1) they are members of a racial minority; (2) the Defendants had an intent to discriminate against them on the basis of race; and (3) the alleged discrimination concerned one or more of the activities enumerated in the statute; in this case, the making of a contract." Nadendla v. WakeMed, 24 F.4th 299, 305 (4th Cir. 2022); see also Ziccardi-Colson v. Turner, No. 5:18-CV-00094, 2020 WL 97457 at *4 (W.D.N.C. Jan. 8, 2020) (citing Bellows v. Amoco Oil Co., 118 F.3d 268, 274 (5th Cir. 1997)).

Here, Plaintiff cannot satisfy that burden. Plaintiff has fulfilled the first requirement by showing that she is a member of a racial minority. (Doc. No. 91, p. 6). However, Plaintiff's claim fails on the second and third elements of a claim for § 1981 contractual discrimination. At the motion to dismiss stage, to satisfy the second element a plaintiff must show "facts that, if accepted as true, would allow the court to draw a reasonable inference" that the defendant's action was motivated by race. Ziccardi-Colson, 2020 WL 97457, at *4 (citing Bellows, 118 F.3d at 274; Woods v. City of Greensboro, 855 F.3d 639, 648 (4th Cir. 2017)). Plaintiff alleges uncited statistics relating to racial discrimination in general in insurance practices and the court system, that Plaintiff's "conviction was ill-gotten and motivated by racial discrimination against her," and that "but for her race and ethnicity," Defendants would not have believed the information concerning Plaintiff's conviction found in the allegedly libelous Charlotte Observer articles, nor would Defendants have furnished this information for the consideration of her insurance applications, or "ignored and even mocked Plaintiff's dispute of the false and/or otherwise inaccurate information and request to bring the account to a zero balance in her favor and for immediate deletion of such information from the CRAs." (Doc. No. 91, p. 14–16). However, Plaintiff "provides no details about any of these conclusory allegations." Nadendla, 24 F.4th at

8

305. Instead, Plaintiff merely states "vague and conclusory allegations" that because racial discrimination exists generally in insurance practices and the criminal justice system, but for her race, she would not have been convicted, the Charlotte Observer would not have published its allegedly libelous articles, and Defendants would not have discriminated against her regarding her insurance policies. (Doc. N. 91, p. 15–16). However, Plaintiff has not pled any facts to support this conclusory sequence of discrimination, nor has she alleged any facts demonstrating Defendants intended to discriminate against her based on her race. Such "labels, conclusions, recitations of a claims' elements and naked assertions devoid of further factual enhancement" are insufficient to show Defendants had the intent to discriminate against Plaintiff on the basis of her race. Nadendla, 24 F.4th at 306 (citing ACA Fin. Guar. Corp. v. City of Buena Vista, Va., (917 F.3d 206, 211 (4th Cir. 2019); see also Iqbal, 556 U.S. at 678.

Similarly, Plaintiff has failed to show that Defendants' alleged discrimination concerned the making of an insurance contract. As this Court has previously determined, Plaintiff's "allegation that the Defendants violated § 1981 is self-defeating" for two reasons. (Doc. No. 4, p. 5). First, Plaintiff admits LM did in fact grant her an insurance contract and that the premium decision was based on her criminal record. (Doc. No. 91, p. 3–4). Second, Plaintiff acknowledges that she was in fact convicted of Identity Theft and Obtaining Property by False Pretenses in Cabarrus County in 2006. (Id. at 15). Even taking as true Plaintiff's contention that her conviction was wrongfully and discriminatorily obtained,[7] this alone does not make Defendants liable for discrimination for including her conviction—which Plaintiff does not claim to have appealed—in

---

[7] Plaintiff asserts that she "was wrongfully convicted by a Caucasian/White judge and an all-White and markedly all-male jury in Cabarrus," and that the "conviction was ill-gotten and motivated by racial discrimination against her." (Doc. No. 91, p. 15).

9

her Consumer File, or for considering her factual criminal record when making its premium decision. Therefore, Plaintiff has failed to show facts that, even if accepted as true, allow the Court to reasonably infer Defendants intended to discriminate against her based on her race, and that this discrimination interfered with the making or enforcement of her insurance contracts. Because this is Plaintiff's Third Amended Complaint, the Court finds Plaintiff has had ample opportunity to cure any defects in her pleadings concerning her § 1981 claim.[8] Thus, because Plaintiff has failed to do so, any further amendment would be futile. Accordingly, the Court holds that Plaintiff's § 1981 claims against both Defendants are DISMISSED WITH PREJUDICE.

**B. 42 U.S.C. § 1986 Claims**

Next, Plaintiff asserts a claim under 42 U.S.C. § 1986. Plaintiff alleges Defendants failed to verify the accuracy of the information they reported in Plaintiff's Consumer File and to investigate Plaintiff's disputes to correct any false or inaccurate information. (Doc. No. 91, p. 18–19). Defendants move for dismissal of Plaintiff's § 1986 claim, arguing Plaintiff did not allege the necessary elements for a conspiracy under § 1985, and as such Plaintiff's § 1986 claim fails. For the reasons stated below, the Court agrees with Defendants.

---

[8] In her response to Defendant MIB's Motion to Dismiss, Plaintiff emphasizes that "Judge Whitney's dismissal of Plaintiff's §§ 1981 and 1986 claims upon the initial review for pro se litigants does NOT constitute *res judicata*, and thus sets no precedent, especially where an amended complaint addresses the purported deficiencies in stating claims regarding these statutes." (Doc. No. 110, p. 5). In Defendant MIB argued that Plaintiff's § 1981 and § 1986 claims fail "for the same reasons outlined in this Court's previous frivolity review." (Doc. No. 103, p. 7). In addition, Defendant MIB further outlined its contentions for why Plaintiff's allegations in her TAC failed to state a claim for relief. (Id.). Thus, this Court construes MIB's reference to the initial review as showing Plaintiff's continued inability to state a claim, and not as alleging Plaintiff's claims should be dismissed under the principles of *res judicata*.

Further, the Court notes that its references to the initial frivolity review throughout this Order are not to be construed as applying *res judicata* to dismiss Plaintiff's claims. This Court has allowed Plaintiff to amend her original Complaint on three occasions. Instead, the Court discusses the initial review to highlight that despite having multiple opportunities to cure any defects identified at the outset, Plaintiff has failed to do so. Thus, Defendants are entitled to dismissal not under *res judicata* but for failure to state a claim under Rule 12(b)(6).

10

Section 1986 provides a cause of action against any party with knowledge of a conspiracy in violation of § 1985 who fails to take action to prevent the violation. The civil conspiracy prohibition contained in § 1985(3), in turn, imposes liability on two or more persons who "conspire . . . for the purpose of depriving . . . a person or class of persons of the equal protection of the laws." Ziglar v. Abbasi, 137 S.Ct. 1843 (2017) (quoting 42 U.S.C. § 1985(3)). To bring a claim under § 1985, a plaintiff must demonstrate:

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

Thomas v. The Salvation Army S. Territory, 841 F.3d 632, 637 (4th Cir. 2016) (quoting Simmons v. Poe, 47 F.3d 1370, 1376 (4th Cir. 1995)). A cause of action under § 1986 "is dependent upon the existence of a claim under § 1985." Davis v. Hudgins, 896 F. Supp. 561, 571 (E.D. Va. 1995) (quoting Trerice v. Summons, 755 F.2d 1081, 1085 (4th Cir. 1985)); Dingle v. Maris, 2021 WL 2324357 (E.D.N.C., June 7, 2021) (same). Thus, "the failure of a Section 1985 claim also defeats the Section 1986 claim." Davis, 896 F. Supp. at 571 (quoting Burcher v. McCauley, 871 F. Supp. 864, at 869 n.4 (E.D. Va. 1994)); see also Trerice, 755 F.2d at 1085.

Here, Plaintiff has failed to allege the existence of a conspiracy under § 1985, and accordingly, her § 1986 claim necessarily fails. Plaintiff neither alleges the existence of a conspiracy between LM and MIB, nor alleges any facts suggesting a conspiracy between these defendants. Though Plaintiff, in her Responses to Defendants' Motions, does allege that Defendants did conspire against her and that "the elements of a § 1985 conspiracy are indefensibly met," (Doc. No. 105, p. 7; Doc. No. 110, p. 5–6), Plaintiff's conclusory allegation lacks any

11

factual support demonstrating a conspiracy. See Nadendla, 24 F.4th at 306. By contrast, Plaintiff alleges that MIB and LM individually "failed to verify the accuracy of the information they reported about Plaintiff" and failed to adequately investigate Plaintiff's subsequent disputes. (Doc. No. 91, p. 17). Even taking these allegations as true, they demonstrate individual failures rather than a conspiracy to discriminate against Plaintiff. Further, as discussed in greater detail in analyzing the § 1981 claim, Plaintiff's pleadings are again devoid of any factual assertions supporting the existence of invidiously discriminatory animus, beyond mere conclusory supposition. Thus, because Plaintiff has not satisfied the elements necessary for a § 1985 claim, her § 1986 claim necessarily fails.

Finally, the Court finds that, as above, Plaintiff has had two previous opportunities to cure any defects in her original Complaint. However, Plaintiff's TAC is nearly identical to her original Complaint with regard to her § 1986 claim, both of which fail to allege facts supporting a conspiracy between Defendants. Further, Plaintiff's additional pleadings similarly lack any facts to support a discriminatory conspiracy. Thus, it is apparent that Plaintiff is unable to state a claim for relief, and any further opportunity to amend her pleadings would be futile. Therefore, Plaintiff's § 1986 claim against both Defendants is DISMISSED WITH PREJUDICE.

C. Gross Negligence Claims

Plaintiff's third cause of action appears to allege Defendants violated the FCRA in their roles as furnishers of information,[9] and stemming from this violation, Defendants are liable for gross negligence. Defendants move for dismissal of Plaintiff's gross negligence claim for three

---

[9] Though Plaintiff does not expressly allege a cause of action for FCRA violations in her TAC, she does allege Defendants are furnishers of information and that they breached the duties owed to Plaintiff under FCRA. (Doc. No. 91, p. 9–10). The Court addresses this claim below.

12

reasons: (1) it is preempted by the FCRA; (2) it is preempted by North Carolina law; and (3) it fails on the merits.

In enacting the FCRA, Congress sought "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." Safeco Ins. Co. of Am. V. Burr, 551 U.S. 47, 52 (2007); Dreher v. Experian Info. Sols., Inc., 856 F.3d 337, 346 (4th Cir. 2017). The FRCA thus imposes civil liability for willful or negligent noncompliance with its requirements. U.S. v. Bormes, 568 U.S. 6, 8 (2012). However, such relief is only available under certain conditions. The FCRA provides:

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any credit reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e) (emphasis added). Thus, there is a narrow exception to the FCRA's general bar on state law actions for defamation, invasion of privacy, and negligence: the plaintiff must show "malice or [the] willful intent to injure [the] consumer." Id. To determine whether a claim falls within that exception, courts follow a two-step inquiry, asking: (1) whether the claim falls within the scope of § 1681h(e), and if so, (2) whether the "malice or willful intent to injure" exception applies. Ross v. F.D.I.C., 625 F.3d 808, 814 (4th Cir. 2010). The parties do not dispute that the first inquiry is satisfied. Thus, the Court must proceed to the second inquiry to determine whether Plaintiff has alleged facts sufficient to show Defendants furnished false information about Plaintiff with either malice or the willful intent to injure her.

13

Though the FCRA does not define malice, North Carolina courts have held that a plaintiff can show malice through "evidence of ill-will or personal hostility on the part of the declarant or by a showing that the declarant published the defamatory statement with knowledge that it was false, with reckless disregard for the truth or with a high degree of awareness of its probable falsity."  Ross, 625 F.3d at 815 (citing Dobson v. Harris, 530 S.E.2d 829, 837 (N.C. 2000)) (internal quotation marks omitted) (applying the knowledge of falsity standard to affirm dismissal of plaintiff's defamation complaint as preempted by the FCRA); Joiner v. Revco Disc. Drug Centers, Inc., 467 F. Supp. 2d 508, 514 (W.D.N.C. 2006).  "An act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others."  Yancy v. Lea, 550 S.E.2d 155, 157 (N.C. 2001) (quoting Foster v. Hyman, 148 S.E. 36, 37-38 (N.C. 1929)).  "Wanton and willful negligence rests on the assumption that [defendant] knew the probable consequences, but was recklessly, wantonly, or intentionally indifferent to the results."  Clayton v. Branson, 623 S.E.2d 269, 264 (N.C. Ct. App. 2005) (quoting Wagoner v. N.C.R. Co., 77 S.E.2d 701, 706 (N.C. 1953)).

> Similarly, North Carolina law provides that:
>
> No cause of action in the nature of defamation, invasion of privacy, or negligence shall arise against any person for disclosing personal or privileged information in accordance with this Article, nor shall such a cause of action arise against any person for furnishing personal or privileged information to an insurance institution, agent, or insurance-support organization: Provided, however, this section shall provide <u>no immunity for disclosing or furnishing false information with malice or willful intent to injure any person</u>.

N.C.G.S. § 58-39-110.  As with FCRA's preemption provision, the parties do not dispute that the information at issue here falls within the scope of this statute.  Thus, Plaintiff's gross negligence

14

action will be barred unless Defendants disclosed or furnished false information about her with either malice or the willful intent to injure Plaintiff.

Finally, under North Carolina law, to state a claim for gross negligence a plaintiff must show the defendant was negligent, and that such negligence was "willful, wanton, or done with reckless indifference." Sawyer v. Food Lion, 549 S.E.2d 867, 870 (N.C. Ct. App. 2001). Thus, whether Plaintiff can bring a claim for gross negligence turns on whether Plaintiff can demonstrate Defendants acted with malice, or with reckless indifference. For the following reasons, the Court finds that Plaintiff has not done so.

Plaintiff fails to provide any factual allegations that support her conclusory assertions that LM's furnishing of information regarding Plaintiff's unpaid balance of $434.00, and that MIBs furnishing of information about Plaintiff's criminal record, were done with malice or willful intent to injure. Plaintiff instead asserts that, in taking these actions, Defendants negligently breached a litany of duties established under the FCRA, as well as a generalized "duty of care to uphold fairness in reporting and underwriting." (Doc. 91, 8–10, 19). She claims this breach occurred because Defendants were "reasonably or otherwise expressly aware" of the injuries Plaintiff would suffer due to "insurance stratification," yet persisted in furnishing false information about Plaintiff's outstanding debt and criminal history. Id. at 19. Plaintiff appears to argue that, because Defendants allegedly had knowledge of her race, this Court should presume that Defendants acted with malice or willful intent to injure Plaintiff by subjecting her to insurance stratification. Id. at 6; (Doc. No. 105, p. 14 (arguing that "racially discriminatory insurance underwriting practices are inherently willful.")). However, the law does not support such a presumption; rather, Plaintiff has the burden of stating a valid cause of action upon which relief may be granted, which requires

15

allegations of plausible facts supporting a finding of malice or willful intent to injure. Iqbal, 556 U.S. at 679.

Even accepting as true Plaintiff's assertion that Defendant LM erred in reporting that Plaintiff owed a $434.00 debt, Plaintiff makes no allegation of any facts supporting her conclusion that LM furnished this information recklessly, wantonly, or with intentional indifference to the effect it would have on Plaintiff. Further, Plaintiff does not assert a single fact demonstrating LM had actual knowledge of the falsity of this debt at the time the information was furnished. See Ross, 625 F.3d at 815. Similarly, as outlined above, Plaintiff admits her felony conviction; therefore, Defendants cannot have acted with malice or willful intent in accurately reporting or considering this conviction as part of Plaintiff's criminal history.[10] (Doc. No. 91, p. 15).

Accordingly, Plaintiff's TAC fails to demonstrate Defendants acted with malice, and the narrow exception to the FCRA's and North Carolina's general bar on negligence actions does not apply. Further, because Plaintiff has not provided any factual support for her allegation that Defendants acted with malice, her gross negligence claim fails on the merits. Finally, the FCRA explicitly precludes any standard negligence claim against Defendants that may be inferred from Plaintiff's TAC.

For the same reasons this Court stated above with reference to Plaintiff's § 1981 and § 1986 claims, the Court finds Plaintiff has failed to state a claim for relief as to her gross negligence claim, and any further opportunity to amend would be futile. Therefore, Plaintiff's gross negligence claim against both Defendants is DISMISSED WITH PREJUDICE.

---

[10] Plaintiff's assertions that she was wrongfully convicted, (Doc. 91, p. 15–16), does not rebut Plaintiff's admission that she was factually convicted of a felony offense, Id. at 13.

16

Case 3:21-cv-00610-FDW-DSC   Document 122   Filed 01/19/23   Page 16 of 19

### D. Defamation Claims

Plaintiff's fourth cause of action alleges Defendants are liable for defamation in the form of either libel or slander, because they made and reported false statements relating to her criminal record and her 2006 state court conviction, and further that LM falsely communicated that she owed a $434.00 debt, to third parties. (Doc. No. 91, p. 20–21). However, as explained above, both the FCRA and North Carolina law preempts defamation claims in addition to negligence claims against furnishers of information absent a showing of malice. 15 U.S.C. § 1681h(e); N.C.G.S. § 58-39-110. As with her gross negligence claim, Plaintiff has failed to allege any facts to support her conclusory allegations that Defendants acted either maliciously or with reckless disregard for the truth. Therefore, Plaintiff's defamation claims against LM and MIB are DISMISSED WITH PREJUDICE.

### E. FCRA Claims

Finally, though Plaintiff's TAC does not expressly allege a cause of action for FCRA violations but instead discusses them with regard to her gross negligence claim, Defendants argue any potential FCRA claim must be dismissed for two reasons: (1) it is time-barred, and (2) it fails on the merits.

Plaintiff's FCRA claims against LM are time-barred, as § 1681p requires that any action to enforce liability under the FCRA be filed within two years after the date the plaintiff discovers the violation that is the basis for such liability. 15 U.S.C. § 1681p. Plaintiff's TAC alleges that she discovered the allegedly inaccurate debt of $434.00 reported by LM on or about September 9, 2019, approximately twenty-six months before her original complaint was filed on November 11, 2021. In addition, the Court finds Plaintiff's argument that she had five years after the date of the

17

Case 3:21-cv-00610-FDW-DSC   Document 122   Filed 01/19/23   Page 17 of 19

alleged violations by which to bring her FCRA claim as unpersuasive. The language of § 1681p—which Plaintiff's response states in full—provides:

> An action to enforce any liability created under this subchapter may be brought in any appropriate United States district court, without regard to the amount in controversy, or in any other court of competent jurisdiction, <u>not later than the earlier of</u>—
> (1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or
> (2) 5 years after the date on which the violation that is the basis for such liability occurs.

15 U.S.C. § 1681p. Because Plaintiff's discovery of the debt was the earliest of the two events, the statute of limitations began to run on September 9, 2019. Thus, for the reasons outlined above, Plaintiff's FCRA claims against LM are DISMISSED WITH PREJUDICE.

Construed liberally, Plaintiff's TAC appears to raise causes of action against MIB under three sections of the FCRA: § 1681e(b), § 1681g(a)(1), and § 1681i(a). (Doc. No. 91, p. 5–6).

A CRA violates § 1681e(b) when they create a consumer report that "(1) contains inaccurate information and (2) the reporting agency did not follow reasonable procedures to assure maximum possible accuracy." Dalton v. Capital Associated Industries, Inc., 257 F.3d 409, 415 (4th Cir. 2001). As discussed above, Plaintiff was convicted of a felony, and thus the indication of such on her consumer report is not inaccurate. Further, Plaintiff makes no factual assertions about whether MIBs accuracy-verifying procedures were reasonable; she simply disputes the validity of her criminal record. (Doc. No. 91, p. 15). Thus, Plaintiff fails to state a claim upon which relief can be granted under § 1681e(b).

Next, § 1681g(a)(1) of FCRA requires that "[e]very consumer reporting agency shall, upon request, . . . clearly and accurately disclose to the consumer . . . [a]ll information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a)(1). FCRA § 1681i(a)(1) requires a CRA to

18

investigate within 30 days if a consumer disputes the accuracy of any item of information on a consumer report. 15 U.S.C. § 1681i(a)(1). The agency may determine such a complaint is frivolous, but it must provide notice of such a determination within 5 business days. § 1681i(a)(3)(A-B).

Plaintiff alleges she made a request to MIB for her consumer file and disputed the debt and criminal record reflected on her consumer report on July 15, 2021. (Doc. No. 91, p. 5). She further alleges MIB never responded to this request and dispute. Id. Thus, Plaintiff has sufficiently stated claims under § 1681g(a)(1) and § 1681i(a) of the FCRA, and MIB's motion to dismiss is DENIED with regards to Plaintiff's claims under these two sections of the FCRA.

### IV. Conclusion

IT IS THEREFORE ORDERED that Defendant LM's Motion to Dismiss Plaintiff's Third Amended Complaint, (Doc. No. 96), is GRANTED and Plaintiff's claims against the LM Defendants are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Defendant MIB Group, Inc.'s ("**MIB**") Motion to Dismiss, (Doc. No. 102), is GRANTED IN PART and DENIED IN PART. Specifically, with respect to Plaintiff's claims under 42 U.S.C. § 1981, 42 U.S.C. § 1986, North Carolina gross negligence law, North Carolina defamation law, and § 1681e(b) of the FCRA, Defendant MIB's Motion is GRANTED, and these are DISMISSED WITH PREJUDICE. With respect to Plaintiff's claims under § 1681g(a)(1) and § 1681i(a) of the FCRA, Defendant MIB's Motion is DENIED.

IT IS SO ORDERED.

Signed: January 18, 2023

Frank D. Whitney
United States District Judge